UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN ALLEN | : | CIVIL NO. 3:02CV1818(DJS) (TPS) |
| | : | |
| v. | : | |
| | : | |
| JOHN ARMSTRONG, ET AL. | : | SEPTEMBER 13, 2007 |

**DEFENDANTS' TRIAL MEMORANDUM**

1. **Trial Counsel**

    **Plaintiff - PRO SE**
    John Allen
    Halawa Correctional Facility
    99-902 Moannlua Rd
    Aiea, HI 96701

    **Defendants' Counsel**
    Steven R. Strom
    Assistant Attorney General
    Federal Bar No. ct01211
    e-mail: steven.strom@po.state.ct.us
    110 Sherman Street
    Hartford, CT 06105
    Tel:  (860) 808-5450
    Fax: (860) 808-5591

**2**.     **Jurisdiction**

    Defendants deny jurisdiction. Plaintiff asserts jurisdiction under 28 U.S.C. §§1331, 1332, 1343(3), 1361, and 1367.  This is an action brought under 42 U.S.C. §1983.

**3**.     **Jury/Non-Jury**

    This case is to be tried to a jury.

**4.**     **Nature of Case**

    This is a prisoner civil rights action under 42 U.S.C. §1983 claiming denial of religious rights under the free exercise clause of the first amendment. Plaintiff seeks compensatory and punitive damages from the defendants who are  sued in their individual capacities..

**5.**        __Plaintiff's Contentions__ [1]

The plaintiff is a Hawaii-sentenced inmate who was incarcerated in Connecticut from November 15, 1996 through November 1, 2000 pursuant to an Interstate Corrections Compact. In 1996, the plaintiff was a practicing Native American and was a member of the People of the Red Tail Alliance and a member of the Pan American Indian Association. Upon his arrival at Northern Correctional Institution ("Northern"), prison officials confiscated his religious headgear and medicine bag. In November and December 1996, the plaintiff submitted inmate requests for a spiritual advisor and the return of his religious headgear and medicine bag. Prison officials did return plaintiff's medicine bag, but they did not respond to plaintiff' request for the return of his religious headgear.

A  Department of Correction (DOC) Native American Chaplain, defendant Mark Allen, arrived at Northern in April 1999 and visited with the plaintiff on April 14, 1999. The plaintiff requested that defendant Allen facilitate the return his religious headgear. On April 15, 1999, the plaintiff submitted a request for the religious headgear to defendant Myers. On June 16, 1999, defendant Allen advised the plaintiff that he was in the process of discussing the request for the return of the religious headgear with the plaintiff's unit manager. In June 1999, the plaintiff submitted a request to defendant Kearney, his Unit Manager, seeking approval to obtain and wear religious headgear. Defendant Kearney denied the plaintiff's request on July 20, 1999, due to safety concerns, but noted that the policy was being reviewed by defendant Bruno, the Director of Religious Services. On August 23, 1999, defendant Murphy responded to plaintiff's appeal of a denial of a grievance concerning the use of the headgear. He informed the plaintiff that defendant Myers had approved the plaintiff's request for the return of the religious headgear, but had determined that the headgear could only be worn in the plaintiff's cell.

---

[1]  See  Ruling and Order  [Doc. #36] granting in part and denying in part the defendants' motion to dismiss.

**6.**     **Defendant's Contentions**

Any and all allegations of wrongdoing are denied. Plaintiff is a Hawaii prisoner who was transferred by Hawaii to Connecticut pursuant to the Interstate Corrections Compact. Plaintiff was transferred due to his serious criminal history which includes serving a sentence of Life without Possibility of Release for 1st degree murder and 1st degree rape. Plaintiff was a serious management problem for Hawaii due to his violent and assaultive nature, which included disciplinary reports for assaulting another person on at least five different occasions, use of force on a correctional worker, threats on a correctional worker, lying, refusing to obey an order, indecent exposure, Being Unsanitary, fighting and numerous other violations. Plaintiff had to be managed in Hawaii in a High Security Unit due to his explosive rage and disrespect for staff.

While in Connecticut, plaintiff threatened to throw feces on staff and on more than one occasion smeared feces either on himself or in his cell. Due to his behavior, he was unable to participate in the collective religious activities he wished. Further, the items he sought, bandanas for headbands, bear skin rugs, animal furs or hides, and gemstones, bear claws etc. posed an unreasonable threat to safety and security. The policies that prohibited such items were reasonably related to legitimate penological objectives.

**7. Legal Issues**

Whether plaintiff can meet his burden of proof demonstrating that the defendants' policies are not reasonably related to legitimate penological objectives. See O'Lone v. Shabazz,

**8. Voir Dire Questions**

See attached list of Defendants' Voir Dire Questions.

**9. Defendants' List of Witnesses**

1.  John Armstrong,[2] Commissioner of the Connecticut Department of Correction, 24 Wolcott Hill Road, Wethersfield.  Commissioner Armstrong will testify as an expert witness in adult corrections. He will testify as to the reason for the policies and denial of plaintiff's headband and other articles at issue in this case and the reasonableness of the defendants' response to plaintiff's requests. He will testify as to the correctional policies and procedures at issue in this case, the DOC investigation of plaintiff's allegations the conclusions of that investigation, and his opinion that the plaintiff is an extremely dangerous individual. The Commissioner's expert opinion will be based in part on his observations of Northern CI and plaintiff's referral package to Connecticut, his knowledge of plaintiff, as well as his review of all evidence in connection with this case, together with his experience training and background. He will deny and defend against any and all allegations of wrongdoing.

2.  Fred Levesque, Director of Population Management, Connecticut Department of Correction, MacDougall-Walker Correction Office, 1153 East Street South, Suffield, CT.  Director Levesque will testify as an expert witness in inmate classification and population management.  He will testify as to plaintiff's transfer and reasons therefore.

3.  Deputy Warden Lynn Milling, MacDougall-Walker Correction Office, 1153 East Street   South, Suffield, CT.  Major Milling will testify as an expert witness in Interstate matters, and DOC Central Records. She will testify as    to plaintiff being a sentenced Hawaii prisoner, and his state convictions, and other relevant information from plaintiff's inmate master file.

4. Anthony Bruno, Director of Religious Services, 24 Wolcott Hill Rd., Wethersfield, CT. Fr. Bruno will testify as to his duties, education training and experience. He will be qualified as an expert in providing religious services in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

---

[2] The named defendants are John Armstrong, Jack Tokarz, Anthony Bruno, Fred Levesque, Giovanny Gomez, Larry Myers, Brian Murphy, Mark Strange, James Huckabey, Mark Allen, Rene Kieda, Thomas Coates, Neal Kearney, Michael LaJoie, Captain Cleaver, Corrections Treatment Officer Mahoney, Corrections Treatment Officer Vadnais, Correctional Officer Hernandez, Correctional Officer Allison, Correctional Officer Fernandez and Robyn DiGennaro. All of the defendants will testify and deny and defend against any and all allegations of wrongdoing

5. Jack Tokarz  will testify as to his duties, education training and experience. He will be qualified as an expert  in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

6. Giovanny Gomez will testify as to his duties, education training and experience. He will be qualified as an expert  in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

7. Larry Myers will testify as to his duties, education training and experience. He will be qualified as an expert  in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

8. Brian Murphy will testify as to his duties, education training and experience. He will be qualified as an expert  in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

9. Mark Strange will testify as to his duties, education training and experience. He will be qualified as an expert  in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

10. James Huckabey will testify as to his duties, education training and experience. He will be qualified as an expert  in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

11. Mark Allen will testify as to his duties, education training and experience. He will be qualified as an expert in providing Native American religious services in corrections and in Native American religious practices. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

12. Rene Kieda, will testify as to his duties, education training and experience. He will be qualified as an expert in providing religious services in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

13. Thomas Coates will testify as to his duties, education training and experience. He will be qualified as an expert  in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

14. Neal Kearney will testify as to his duties, education training and experience. He will be qualified as an expert in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

15. Michael LaJoie will testify as to his duties, education training and experience. He will be qualified as an expert in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

16. Captain Cleaver will testify as to his duties, education training and experience. He will be qualified as an expert in corrections. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

17. Corrections Treatment Officer Mahoney will testify as to his duties, education training and experience. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

18. Corrections Treatment Officer Vadnais will testify as to his duties, education training and experience. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

19. Correctional Officer Hernandez will testify as to his duties, education training and experience. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

20. Correctional Officer Allison will testify as to his duties, education training and experience. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

21. Correctional Officer Fernandez will testify as to his duties, education training and experience. He will testify as to the policies, procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

22. Robyn DiGennaro will testify as to her duties, education training and experience. She will testify as to the policies, procedures and practices of the DOC as they relate to the allegations of the complaint. Shee will testify as to the correspondence and records she has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

23. Ed Sarabia, State of Connecticut Native American Affairs Coordinator, will testify as to his duties, education training and experience. He will be qualified as an expert in providing Native American religious services in corrections and in Native American religious practices. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

24. Tom Flanders, Native American chaplain, will testify as to his duties, education training and experience. He will be qualified as an expert in providing Native American religious services in corrections and in Native American religious practices. He will testify as to the policies procedures and practices of the DOC as they relate to the allegations of the complaint. He will testify as to the correspondence and records he has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

25. Deputy Warden Lynn Milling will testify as to her duties, education training and experience. She will testify as to the policies, procedures and practices of the DOC as they relate to the allegations of the complaint. Shee will testify as to the correspondence and records she has of the plaintiff and the penological reasons for the denial of plaintiff's requests.

10.    **Exhibits**

The defendants' exhibit list is attached hereto in accordance with the Pretrial Order.

11.    **Deposition Testimony**. None

12.    **Requested Jury Instructions**

See Defendants' Jury Instructions – will be provided.

13.    **Anticipated Evidentiary Problems**

None at this time.

14.    **Court Side Cases**

Not applicable.

15.    **Trial Time**

This case could be tried in 4-5 days if limited to relevant, material witnesses and exhibits. Thus, it is reasonable to expect that if the evidence began on a Monday, the evidence could be completed by late Thursday or early Friday, with the jury getting the case by noon on Friday. However, the case could possibly extend to 6 or 7 days, in view of the number of defendants and their witnesses.

**16.    Further Proceedings**

One or more telephonic pretrial conferences may be necessary to discuss whether the case can be

settle or if not, how to obtain the Hawaii prisoner plaintiff's presence in Connecticut.

DEFENDANTS

John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: ___/s/_____
    Steven R. Strom
    Assistant Attorney General
    Office of the Attorney General
    110 Sherman Street
    Hartford CT 06105
    Tel: (860) 808-5450
    Fax: (860) 808-5591
    Federal Bar No. ct 01211
    steven.strom@po.state.ct.us

**CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this _____

day of September, 2007, to:

    John Allen
    Halawa Correctional Facility
    99-902 Moannlua Rd
    Aiea, HI 96701

            ___/s/_____
            Steven R. Strom
            Assistant Attorney General

8